IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br><br>Plaintiff,<br><br>v.<br><br>KHACHTRYAN,<br><br>Defendant. | Case No. 15-cr-00234-CRB-16<br><br>**ORDER DENYING MOTION FOR A REDUCED SENTENCE UNDER 18 U.S.C. § 3582(C)(1)(A)** |

Defendant Hripsime Khachtryan has moved for a reduced sentence under 18 U.S.C. § 3582(c)(1)(A). Ms. Khachtryan argues that her underlying health conditions place her at risk for serious illness or death if she contracts COVID-19. The Court DENIES the motion but GRANTS a 120 day continuance of Ms. Khachtryan's self-surrender date. Ms. Khachtryan's new self-surrender date is July 27, 2021.

## I.  BACKGROUND

On May 10, 2017, Ms. Khachtryan pleaded guilty to one count of participating in a racketeering enterprise in violation of 18 U.S.C. §1962(d). See Amended Judgement (dkt. 1397) at 1; Mot. (dkt. 1602) at 2. Specifically, Ms. Khachtryan pleaded guilty to working with her husband Tigran Sarkisyan to fraudulently cash 42 tax checks. Opp. (dkt. 1610) at 2.

On August 1, 2018, this Court sentenced Ms. Khachtryan to 12 months and one day of imprisonment followed by three years of supervised release. See Amended Judgement at 2–3. The Court sentenced Mr. Sarkisyan to 15 months imprisonment. See Opp. at 2. The Court staggered Mr. Sarkisyan and Ms. Khachtryan's sentences to allow for at least one parent to care for their four children while the other was in custody. See Opp. at 2;

Mot. at 3. Mr. Sarkisyan served his sentence first and was granted compassionate release by this Court on May 16, 2020. See Opp. at 2; Mot. at 3. Ms. Khachtryan is scheduled to self-surrender to the Bureau of Prisons on March 29, 2021. See Order regarding Self-Surrender (dkt. 1592) at 1.

Ms. Khachtryan now moves for a reduced sentence to "probation with a reasonable period of home confinement as a term of supervised release" under § 3582(c)(1)(A). See Reply (dkt 1613) at 2; Mot. at 1. Alternatively, Ms. Khachtryan asks that the Court vacate her surrender date, and "set a new date at a time when it would be safe for Ms. Khachatryan to begin a term of imprisonment." Mot. at 24. Ms. Khachtryan argues that extraordinary and compelling circumstances warrant a sentence reduction because she suffers from several medical conditions, including obesity, diabetes, and hypertension, that place her at high risk for contracting a severe case of COVID-19—especially within a Bureau of Prisons facility. See Mot. at 1–2, 16; Ex. C. While vaccination rollout has increased in recent months, Ms. Khachtryan argues that COVID-19 vaccinations do not protect individuals from new variants of COVID-19. Reply at 9. She also argues that regardless of vaccination protection rates for other individuals, her doctor has advised that "Ms. Khachatryan not . . . get vaccinated for COVID-19 due to her compromised immunity and allergies." Reply Ex. A.

The Government opposes a reduced sentence but proposes a 60 day delay in Ms. Khachtryan's self-surrender date. See Opp. at 15–16.

**II.    LEGAL STANDARD**

The Sentencing Reform Act of 1984, 18 U.S.C. § 3551 et seq., does not generally permit federal courts to "modify a term of imprisonment once it has been imposed." Dillon v. United States, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). Congress has provided certain exceptions to that rule. As relevant here, a court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) if certain procedural requirements are met and if "extraordinary and compelling reasons warrant such a reduction."

Before the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, a defendant could not bring a motion for compassionate release under § 3582(c). Under the original compassionate release framework, enacted as part of the Comprehensive Crime Control Act of 1984, only the Director of the Bureau of Prisons could move for compassionate release on a defendant's behalf. See 18 U.S.C. § 3582(c)(1)(A) (2017).

But effective December 2018, the First Step Act permits a defendant to move for relief under § 3582(c)(1)(A) if the defendant satisfies the statute's exhaustion requirements. See First Step Act § 603(b)(1). The defendant may bring a motion only once she has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons" to bring the motion on her behalf, or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

The First Step Act did not affect the original framework's requirements that a court consider the factors set forth in 18 U.S.C. § 3553(a) before granting a motion for a reduced sentence, and that any sentence reduction under § 3582(c) is "consistent with applicable policy statements issued by the Sentencing Commission." See 18 U.S.C. § 3582(c)(1)(A).

Before the First Step Act enabled defendants to bring their own motions for compassionate release under § 3582(c)(1)(A), the Sentencing Commission promulgated a policy statement enumerating circumstances constituting "extraordinary and compelling reasons" to reduce a sentence, U.S.S.G. § 1B1.13 cmt n.1, and directing that a court may reduce a sentence under § 3582(c)(1)(A) only if the court finds that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," U.S.S.G. § 1B1.13(2). The policy statement refers to motions brought by the Director of the Bureau of Prisons and not to motions brought by defendants, as defendants could not bring such motions when the policy statement was last amended. See U.S.S.G. § 1B1.13.

Because the policy statement has not been updated or modified since Congress enacted the First Step Act, it is not obvious whether it applies to motions brought by

3

defendants. Several U.S. Circuit Courts have held that, because the policy statement refers only to motions brought by the director of the Bureau of Prisons, it does not apply to motions brought by defendants. See Brooker, 976 F.3d 228; United States v. Gunn, 930 F.3d 1178 (7th Cir. 2020); United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). According to these courts, the Sentencing Commission has not promulgated any policy statement that limits district courts' discretion to grant motions brought by defendants under § 3582(c). See, e.g., Brooker, 976 F.3d at 237. If that is right, district courts are neither required to consider whether the defendant is a danger to the community under U.S.S.G. § 1B1.13(2) nor limited to recognizing only those "extraordinary and compelling" circumstances enumerated by the Sentencing Commission in U.S.S.G. § 1B1.13 cmt n.1. Other courts have disagreed, holding that U.S.S.C. § 1B1.13 controls to the extent it does not squarely conflict with § 3582(c)(1)(A), as amended by the First Step Act. See, e.g., United States v. Lynn, No. 89-0072-WS, 2019 WL 3805349 (S.D. Ala. Aug. 13, 2019).

    Today, the Court need not resolve whether the Sentencing Commission's policy statement applies to motions brought by defendants. Even if the policy statement applies only to motions brought by the Director of the Bureau of Prisons, the Court presently agrees with the policy statement's definition of "extraordinary and compelling reasons" and the policy statement's guidance that people who present a danger to the community should not be granted compassionate release.

    First, the Sentencing Commission's enumerated circumstances constituting "extraordinary and compelling reasons" to reduce a sentence all relate to a defendant's individual characteristics or conditions—that is, some combination of the defendant's health, age, and family situation. See U.S.S.G. § 1B1.13 cmt n.1. For example, if the defendant suffers from "a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)" or "a serious physical or mental condition, . . . serious functional or cognitive impairment, or . . . deteriorating physical or mental health because of the aging process . . . that substantially diminishes the ability of the defendant to provide self-care

4

within the environment of a correctional facility and from which he or she is not expected to recover," the "extraordinary and compelling reasons" standard is satisfied. See U.S.S.G. § 1B1.13 cmt. n.1(A)(i)(i)–(ii).  The standard is also satisfied if "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75% of his or her term of imprisonment, whichever is less," U.S.S.G. § 1B1.13 cmt. n.1(B), or in certain circumstances requiring the defendant to care for minor children or a spouse or registered partner, id. § 1B1.13 cmt. n.1(C).  Finally, the standard is satisfied if, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary or compelling reason other than, or in combination with," the above-described circumstances.  U.S.S.G. § 1B1.13 cmt. n.1(D).

The Sentencing Commission's enumerated circumstances constituting "extraordinary and compelling reasons" to reduce a sentence are sensible.  Although a future motion could conceivably persuade the Court that these circumstances fail to capture the full range of "extraordinary and compelling reasons" to reduce a sentence under § 3582(c)(1)(A), the Court is yet to encounter such a motion.

Second, as discussed above, the Sentencing Commission has directed that a court may reduce a sentence under § 3582(c)(1)(A) only if the court finds that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).  Section 3142(g), in turn, requires courts to "take into account" four factors when determining the defendant's dangerousness: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g).

This framework is also sensible.  Indeed, the Court would not exercise its discretion under § 3582(c)(1)(A) to grant relief to a defendant that the Court determines is a danger to the community.  Thus, even if permitted, the Court sees no reason to deviate from the

policy statement's framework, which ensures that the Court carefully weighs the public's interest in safety before reducing a defendant's sentence.

As to both aspects of the policy statement, the Court also presently finds that it would be illogical to apply a stricter standard to motions brought by the Director of the Bureau of Prisons than to motions brought by defendants. No one disputes that the Sentencing Commission's policy statement continues to apply to motions brought by the Director of the Bureau of Prisons. See, e.g., Brooker, 976 F.3d at 235. Thus, the Court continues to rely on the policy statement as establishing helpful objective guideposts for evaluating whether a defendant should be granted compassionate release under § 3582(c)(1)(A).

### III.   DISCUSSION

The Court DENIES the motion for compassionate release but continues Ms. Khachtryan's self-surrender date for 120 days. Ms. Khachtryan has satisfied the statute's exhaustion requirement such that the Court may decide her motion on the merits. Opp. at 3.[1] The Court has also previously noted that the statute does not expressly or implicitly require movants to be in custody. See United States v. Hussain, No. 16-cr-462-CRB-1, 2020 WL 5910065, at *3 (N.D. Cal. Oct. 6, 2020).

#### A.   Extraordinary and Compelling Reasons

COVID-19 vaccines are highly effective and overall vaccination rates are increasing. While Ms. Khachtryan has submitted a letter from her doctor advising her to not receive a vaccination due to her allergies and medical conditions, the Court does not find that this note, or Ms. Khachtryan's medical conditions, constitute "extraordinary and compelling reasons" for compassionate release—especially because the Court can simply continue Ms. Khachtryan's surrender date.

---

[1] Ms. Khachtryan "submitted letters and e-mail requests for compassionate release" to the wardens at FCI-Dublin and FCC-Victorville, "the two facilities where Ms. Khachtryan will likely be designated." Mot. at 8. The Warden Tews of FCI-Dublin has declined this request, thirty days have elapsed since both requests were made. See id. at 8, Ex. B. The government does not dispute that Ms. Khachtryan has satisfied the statute's exhaustion requirement. See Opp. at 3.

Ms. Khachtryan bases her motion on her diagnosis of "multiple" comorbidities "that could easily lead to severe illness, morbidity, and mortality if she were to contract COVID-19." Mot. at 21. These comorbidities include "Obesity, Diabetes Mellitus Type 2 (DM-II), Chronic Obstructive Pulmonary Disease (COPD), and a history of smoking." Mot. at 19; Ex. C at 1–3.

Before the emergence of effective vaccines, these conditions likely would have constituted extraordinary and compelling reasons to reduce Ms. Khachtryan's sentence. The Center for Disease Control and Prevention (CDC) guidance on underlying conditions suggests that these medical conditions put individuals at an increased risk for a severe case of COVID-19. See CDC, "People with Certain Medical Conditions," updated Feb. 22, 2021, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited March 15, 2021). The government concedes that although "most of [Ms. Khachtryan's] conditions appear to be under control," and although the Bureau of Prisons "has taken significant measures to protect the health of inmates in its charge," Ms. Khachtryan's medical condition "would arguably present an extraordinary and compelling reason" to reduce her sentence. Opp. at 9–11. In the context of the COVID-19 pandemic, these medical conditions render Ms. Khachtryan uniquely vulnerable to serious illness if she contracts COVID-19, and thus would substantially diminish her ability "to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii).

That said, the increasing availability of vaccines is making incarceration (and life in general) less dangerous. As of today, the CDC has approved the emergency use of three COVID-19 vaccines in the United States: Pfizer-BioNTech, Moderna, and Jassen/J&J. See CDC, "U.S. COVID-19 Vaccine Product Information," updated March 2, 2021, available at https://www.cdc.gov/vaccines/covid-19/info-by-product/index.html (last visited March 15, 2021). The ongoing Janssen/J&J vaccination clinical trial indicates that the vaccine is approximately "85% effective in preventing severe/critical COVID-19 occurring at least 28 days after vaccination." CDC, "Janssen COVID-19 Vaccine

7

Frequently Asked Questions," available at https://www.fda.gov/emergency-preparedness-and-response/mcm-legal-regulatory-and-policy-framework/janssen-covid-19-vaccine-frequently-asked questions#:~:text=United%20States%3A%20the%20vaccine%20was,28%20days%20after%20vaccination%2C%20respectively (last visited March 15, 2021).  This trial includes participants of all ages as well as participants who have various underlying conditions.  See id.  In clinical trials, the Pfizer-BioNTech vaccine "was 95% effective" at preventing COVID-19 in individuals.  See CDC, "Information about the Pfizer-BioNTech COVID-19 Vaccine," last updated March 4, 2021, available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Pfizer-BioNTech.html (last visited March 15, 2021).  Lastly, clinical trials found the Moderna vaccine to be 94.1% effective in preventing COVID-19.  See CDC, "Information about the Moderna COVID-19 Vaccine," last updated March 4, 2021, available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Moderna.html (last visited March 15, 2021).  The CDC has recommended that adults with "underlying medical conditions that increase the risk of serious, life-threatening complications from COVID-19, should be among those offered COVID-19 vaccine first" because these vaccines can prevent serious illness from COVID-19.  See CDC, "COVID-19 Vaccines for People at Increased Risk for Severe Illness from COVID-19" last updated March 13, 2021, available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/specific-groups/high-risk.html (last visited March 15, 2021).  The CDC has also stated that although there are new variants of the COVID-19 virus, "antibodies generated through vaccination with currently authorized vaccines recognize these variants" and thus vaccinations will still protect individuals.  CDC, "About Variants of the Virus that Causes COVID-19," last updated Feb. 12, 2021, available at https://www.cdc.gov/coronavirus/2019-ncov/transmission/variant.html (last visited March 21, 2021).  Additionally, as more individuals become vaccinated, the overall population will likely reach herd immunity and protect "those who can't be vaccinated, such as . . .

those who have compromised immune systems." Mayo Clinic, "Herd Immunity and COVID-19 (coronavirus): What you need to know," last updated March 3, 2021, available at https://www.mayoclinic.org/diseases-conditions/coronavirus/in-depth/herd-immunity-and-coronavirus/art-20486808 (last visited March 21, 2021). In sum, experts believe that COVID-19 vaccinations are safe and will decrease the threat of severe illness or death to individuals with underlying health conditions.

That Ms. Khachtryan has submitted a doctor's note instructing her to not get vaccinated does not justify granting her compassionate release before she serves a day in prison. The pace of vaccination is promising. As of today, more than 10% of Californians are fully vaccinated, and the United States has increased vaccination rates after the emergency authorization of Jassen/J&J vaccine. See Johns Hopkins University of Medicine, "Understanding Vaccination Progress," available at https://coronavirus.jhu.edu/vaccines/us-states (last visited March 15, 2021). Additionally, President Biden recently directed states to make all adults eligible for the vaccine by May 1, 2021. See New York Times, "Presidential Speech Highlights: Biden Calls for U.S. to "Mark Our Independence From This Virus' by 4th of July," last updated March 15, 2021, available at https://www.nytimes.com/live/2021/03/11/us/joe-biden-news#biden-directs-states-to-make-all-adult-americans-eligible-for-vaccine-by-may-1 (last visited March 15, 2021). Even if Ms. Khachtryan cannot be vaccinated herself, once a threshold number of individuals in the general population are vaccinated, the risk to Ms. Khachtryan will significantly decrease. See Mayo Clinic, "Herd Immunity and COVID-19 (coronavirus): What you need to know." Granting a 120 day continuance to Ms. Khachtryan's self-surrender date will allow more members of the general population, including inmates and staff at Bureau of Prison facilities, to become vaccinated and will reduce Ms. Khachtryan's risk of contracting a severe illness.[2]

---

[2] Because the Court concludes that Ms. Khachtryan has not shown extraordinary and compelling reasons to reduce her sentence, the Court need not consider whether Ms. Khachtryan presents a danger to the community.

9

## IV. CONCLUSION`

For the foregoing reasons, the Court DENIES the motion for compassionate release but continues Ms. Khachtryan's self-surrender date by 120 days. Ms. Khachtryan's new self-surrender date is July 27, 2021.

**IT IS SO ORDERED.**

Dated: March 23, 2021



CHARLES R. BREYER
United States District Judge